IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **GOMEL STORY HILL LLC,** | § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 3:23-CV-00712-N |
| **WESTCHESTER SURPLUS LINES INSURANCE COMPANY,** | § § § § | |
| Defendant. | § § | |

## PLAINTIFF'S FIRST AMENDED COMPLAINT

COMES NOW Gomel Story Hill, LLC, (hereinafter referred to as "Plaintiff") complaining of Westchester Surplus Lines Insurance Company (hereinafter referred to as "Defendant" and/or "Westchester"), and respectfully show as follows:

## I.
## PARTIES

1. Plaintiff is a Delaware Limited Liability Corporation incorporated under the laws of the State of Delaware. The members of Plaintiff are entities incorporated under the laws of the State of Texas.

2. Defendant Westchester Surplus Lines Insurance Company is an insurance company engaging in the business of insurance in the State of Texas. No service is necessary at this time as Defendant has been property served and has appeared in this lawsuit through counsel.

## II.
## JURISDICTION

3. Pursuant to 28 U.S.C. § 1441, et. seq., Defendant removed this case based on diversity of

citizenship under 28 U.S.C. § 1332 [D.E. 1].

4. Additionally, this Court has jurisdiction over Defendant because this Defendant engages in the business of insurance in the State of Texas, and because Plaintiff's causes of action arise out of this Defendant's business activities in the State of Texas.

## III.
## VENUE

5. Venue is proper in this District based on 28 U.S.C. § 1391(b)(2) in that a substantial part of the property that is the subject of the action is situated in this District Court, the Northern District of Texas, Dallas Division.

## IV.
## NOTICE AND CONDITIONS PRECEDENT

6. Defendant has been provided notice, in writing, of the claims made by Plaintiff in this complaint, including Plaintiff's actual damages, in the manner and form required pursuant to TEX. INS. CODE § 542A.003. Plaintiff received a copy of such notice.

7. All other conditions precedent to suit or payment under the policy have been satisfied by Plaintiff, excused or waived by Defendant, or Plaintiff is excused from performance due to Defendant's prior breach of the policy. Defendant has not been prejudiced by Plaintiff's actions, inactions, or delays, if any.

8. Any failures that may have occurred on behalf of the Plaintiff has not prejudiced the Defendant in this case.

## V.
## FACTS

9. This lawsuit relates to a claim for insurance proceeds for damages related to Plaintiff's commercial property as a result of a weather event.

### A. The Property and the Policy

10. At all material times, Plaintiff was the owner of property located at 3602 Country Club Road N., Irving, TX 75062 (the "Property"). At all material times, the Property was insured by insurance policy number D94990245 001, issued by Defendant Westchester (the "Policy"). Plaintiff is the owner of the Policy and the named insured under the Policy.

### B. The Weather Event

11. On or about February 17, 2021, or another time when the Policy was in effect, a massive winter storm hit Texas causing substantial damage to millions of properties across the State ("Storm"). The winter storm lasted nearly a week, with its residual damages and effects lasting months. The Storm was reported by numerous news and weather agencies across the nation.

12. As a result of the Storm, the Property sustained significant damage all over, including its floors, walls, ceilings, and exteriors. The damages to the Plaintiff's Property as a result of the Storm constituted a covered loss under the Policy.

### C. The Claim and Defendant's Failures to Properly Handle the Claim

13. On June 18, 2021, Plaintiff formally reported the claim and Defendant assigned claim number KY21K2513016. However, Defendant had been well aware of the freeze damages for months preceding the official filing of the claim.

14. A prior fire claim impacted the property in January 2021 and during the adjustment of this claim, the extreme "polar vortex" of the Texas winter storm impacted the Property causing catastrophic damage. There were numerous inspections at the Property with Defendant's representatives and adjusters discussing the freeze damages with Plaintiff's representatives prior to the formal claim reported date of June 18, 2021.

15. On June 23, 2021, Defendant formally assigned Charles Robertson of McLarens to investigate and adjust the loss. Mr. Robertson delayed submitting his report for nine months. Claim

Supervisor Jonathan Edwards acknowledged this problem on May 13, 2022 (nearly a year after the claim was "reported") noting that "We are having a tough time getting information on a claim … Charles did not get a report to us on this one for nearly 9 months … we need to get on top of this."

16.     Despite Supervisor Edwards's acknowledgment and admonishment, the claim continued to be inexplicably delayed. There was no correspondence whatsoever between Defendant and Plaintiff from June 21, 2021, until February 10, 2022, which was nothing more than a brief response email stating that the adjuster was out of the office and would "update" Plaintiff regarding the Claim status when they returned.

17.     On September 10, 2021, Plaintiff submitted to Defendant a sworn, signed proof of loss regarding the covered freeze damages. Defendant *acknowledged receipt* of that sworn, signed proof of loss, did not raise any issue regarding coverage or any applicable limitation or reservation of rights, and in fact indicated that full payment was forthcoming.

18.     On March 30, 2022, the nine-month delayed report from Charles Robertson was received by Defendant, five months after his first inspection.

19.     In the report, Mr. Robertson acknowledged that February 18, 2021, is "a valid date as the entire state of Teas experienced a deep freeze event from February 15 through February 20, 2021. Temperatures we (sic) at or below zero for 48 hours/more. … Many areas (across the state) experienced no power for consecutive days. These loss locations did experience power outage."

20.     Mr. Robertson's report stated that Plaintiff's public adjuster completed a preliminary estimate for damages to the property and that Mr. Robertson was "able to walk through some of this property and confirm the damages as presented by the estimator." Mr. Robertson went on to say, "We have examined the presented building estimate for repair for the affected units and are

in agreement with the presented scope based off our visual inspection/confirmation of the presented items." In fact, Mr. Robertson studied the estimate closely, applying depreciation for each affected material, which the estimate did not do. Based on his review, investigation, and agreement with the insured's representatives, Mr. Robertson concluded that the "Recommended Actual Cash Value Payment" was $ 464.193.80.

21. Defendant received this information on March 30, 2022. However, after having finally received the report and estimate for which Defendant had been waiting nearly nine months, Defendant did nothing.

22. Between the receipt of the report on March 30, 2022, no less than five requests for a status update were sent by Plaintiff or Plaintiff's representatives, however Defendant's own internal documentation demonstrates that Defendant did nothing on this claim from March 30, 2022, until nearly 45 days later on May 13, 2022.

23. As of May 13, 2022, eleven (11) months had elapsed since the freeze claim was formally reported (yet in reality fifteen (15) months since Defendant had notice of the freeze damages). Yet at this time Defendant had still failed to affirm or deny coverage or issue any reservation of rights. The only communications sent to Plaintiff from Defendant were an email on June 18, 2021, requesting information, which was promptly provided, and an email on June 21, 2021, confirming addresses and ownership of the property, which information was again promptly provided. Then a series of excuse emails were sent on February 10, March 6, and March 23, 2022, simply stating that Defendant is waiting on the adjuster's report.

24. After having received the adjuster's report, and having had 45 days to review it, and even acknowledging its recommended payment of $ 464,193.80, Defendant issued no payment, offered no substantive update to Plaintiff, provided neither coverage decision nor reservation of rights, and

the delay inexplicably continued.

25.    On May 17, 2022, despite Mr. Robertson's affirmative statement to Defendant that he "examined the presented building estimate" and found it to be in line, Defendant for the first time began to question the long-awaited report, now noting that it "appears IA has submitted PA estimate of damages without a comparison estimate of his own." And for the very first time in this claim, nearly a year from its formal report date, Defendant determined that a building consultant was necessary, and purportedly retained Young & Associates.

26.    On June 3, 2022, Defendant informed Plaintiff that it was now waiting on a new valuation, and "again, once we have their [now Young & Associates] valuation we will forward the findings."

27.    As of June 3, 2022, nearly a year after the formal reporting of the claim, Defendant had never taken the position that any of the claimed damages are not 100% covered, and Defendant had reserved no rights under its policy. Defendant had a report and estimate recommending an "undisputed" ACV payment of $464,193.80. Defendant did nothing.

28.    Moreover, on June 3, 2022, Defendant communicated with Plaintiff for the last time on the claim. Defendant sent an email stating that a forensic accounting firm (MDD) and a loss consultant (YA) are working on the claim now, and that Defendant will update the insured accordingly. After this email, Defendant ceased all communication with Plaintiff.

29.    Following the June 3, 2022, cessation of all communications with its insured, on September 20, 2022, 3 months after Young & Associates purportedly inspected the freeze claim, Defendant's internal documentation simply states that it is still waiting on "revised estimate of damages from YA to reflect higher amount of damages found in their inspection" which took place in June.

30.    Also on September 20, 2022, Defendant received the Second McLarens report from Mr. Robertson. This report mentioned an "updated estimate of repair from Young & Associates (YA)

which addresses damages noted to the loss location and that are associated with the freeze event."

Mr. Robertson then provided Defendant several excerpts from the YA Report, which included:

> *These items were observed by YA and reviewed during the investigation. The investigation revealed that water related damage as a result of the freeze loss as outlined originally by the Public Adjusters estimate, and additional apartment units were inspected per the outline provided by the apartment manager. A total of 53 units were inspected during the allotted time allowed by the current property owner, a total of 27 units were confirmed to have damage related to the loss.*

31. Mr. Robertson's second report went on to state that "A complete estimate of repair has been generated by YA for the damages scoped as noted above. The RCV value of this estimate is $875,666.92, minus applicable depreciation of $176,594.52, for an ACV total of $699,072.40. There is a $50,000.00 deductible that will apply to the loss bringing the suggested ACV total to $649,072.40."

32. Mr. Robertson's second report concluded, "We have examined the presented estimate of repair (YA build-back estimate less applicable depreciation) and the presented MDD Forensic Accounting Schedule and are in agreement with the presented findings." Defendant's adjuster, in agreement with Defendant's building consultant and forensic accountant, recommended an actual cash value payment amount of $968,136.40. None of this information was provided to Plaintiff, and Defendant did nothing.

33. Defendant's internal notes indicated it was waiting on the repair estimate from YA, and the business interruption valuation from MDD. Both of those were received on September 20, 2022. It is now without any doubt that Defendant's liability for an ACV payment of $ 968,136.40 was reasonably clear, yet Defendant did nothing. Moreover, Defendant is now in receipt of the long-awaited reports verifying unequivocally the amount of covered damages sustained by Plaintiff, and Defendant did nothing.

34. Following Defendant's June 3, 2022, cessation of all communications with them, Plaintiff

made a final attempt, and sent an email on October 24, 2022, effectively begging Defendant to do something. Defendant ignored that correspondence and did nothing. Plaintiff was forced to hire counsel.

35. On October 26, 2022, counsel for Plaintiff provided a letter of representation to Defendant related to the freeze claim and requested information. That information was never provided.

36. To-date, and even following receipt of Plaintiff's Notice Letter on December 8, 2022 (to which Defendant never responded), Defendant has completely failed to properly adjust, evaluate, and provide coverage for this claim.

37. The following facts of the case are undisputed:

   a) Defendant's hand-picked adjuster, building consultant, and forensic accountant determined the amount of covered damages to the property were $1,144,730.92.

   b) Defendant has issued no payment related to this claim.

   c) Defendant ceased communications with its insured related to the freeze claim from June 3, 2022, until March 29, 2023, which was the day it answered the instant lawsuit.

   d) Defendant has never affirmed or denied coverage for this loss.

   e) Defendant has never issued a reservation of rights.

   f) Defendant has never taken the position that the damages, including repair costs and business interruption are not 100% covered.

   g) To date, Defendant has never provided the Young & Associates report or estimate related to the freeze claim to Plaintiff, inexplicably withholding that information without any legitimate basis.

38. Defendant's conduct in this claim is nothing short of egregious, and the damage Defendant has inflicted on Plaintiff as a result of the egregious conduct is incalculable. Plaintiff was forced into a distressed sale of the property, lost years of revenue, reputation, opportunities, and a value appreciating asset. This is all the direct result of Defendant's total failures related to this claim.

39. To-date, and in direct violation of the Policy, the Texas Insurance Code, and the Common Law Duties of Good Faith and Fair Dealing, Defendant has failed to provide a coverage determination, a reservation of rights, or issue the undisputed $850,000 payment to Plaintiff.

40. Defendant failed to comply with the Policy, the Texas Insurance Code, and Texas law in handling Plaintiff's claim. Further, Defendant has refused to pay all amounts due and owing under the Policy for the Claim.

41. Defendant assigned various adjusters and/or claims handlers to work on the claim, including Raj Rajendran, George Lasho, and Charles Robertson. At all times material, these individuals and all other persons or entities involved with the Claim on behalf of Defendant were acting as Defendant's agents in the course and scope of their agency with Defendant. Accordingly, Defendant is liable for their acts and omissions.

42. From the start of the investigation, Defendant and its adjusters engaged in intentional delay tactics designed to frustrate its insured. It is clear that upon receipt of the McLarens estimate which exceeded $850,000, Defendant decided to engage in a campaign of delay and obfuscation, clearly designed to "wait out" its insured to attempt to run out the applicable limitations period and thus avoid liability altogether. Its clear scheme to limit its own liability, and completely ignore its insured's valid claim was in violation of the Policy terms and Texas law.

43. Despite the damages being evident, and despite Defendant's liability being reasonably clear, Defendant and its adjusters ignored their own internal reports, ignored the deadlines set forth

by the Texas Insurance Code, ignored its insured and its representatives, and ignored the claim altogether.

44. Had a proper investigation been performed in good faith, Defendant would have made payment in full as the damages were identified. That did not happen here.

45. Plaintiff, and the Professional Public Adjuster hired on behalf of the Plaintiff, provided Defendant with numerous documents and information evidencing the covered losses at the Property.

46. Although Defendant received numerous documents evidencing the damages, it continued to ignore pertinent information relating to the claim.

47. Defendant continued to frustrate the insureds and made numerous misrepresentations regarding the actual damages. Despite the fact that its own adjuster documented over $850,000 in covered damages, Defendant disputed numerous items of damages with the insureds that were otherwise covered losses. For example, Defendant ignored and refused to pay the costs incurred by Plaintiff in relocating its tenants whose units were not livable, and has continued to refuse to pay for the documented lost rents provided by Plaintiff.

48. Without any explanation, Defendant refused to issue payment for these covered losses. These costs and damages were fully covered under the Policy, yet Defendant simply refused to abide by the terms and conditions of the Policy and continued to misrepresent the damages and undervalue the loss, causing injury and harm to Plaintiff.

49. The Policy and the law were not followed by Defendant. Defendant presented no reasonable explanation for its failure to pay these damages. These damages are covered under the Policy, and instead of paying the full amount it knew it owed under the Policy, Defendant instead continued to misrepresent the damages and the extent of loss.

50. Defendant knew, or should have known, the damages were covered during its investigation, but intentionally ignored such evidence and continued to undervalue the claim.

51. Despite all reasonable efforts made by Plaintiff to work with Defendant and its agents towards a prompt and fruitful resolution of the Claim, Defendant has refused to make full payment as owed under the Policy. Defendant had numerous opportunities to comply with the Policy and the Texas Insurance Code, however Plaintiff has yet to be compensated for its losses covered under the Policy.

52. Plaintiff presented a Claim under the Policy for damages caused by the Storm. It was Defendant's responsibility, not the insureds', to conduct a reasonable and thorough investigation of the Claim to determine the specific causes of the loss and the amounts of loss. Defendant failed to do so. Although Defendant and its agents are required by Texas law and the Policy to conduct a reasonable and thorough investigation of the Claim, they failed to do so.

53. Rather than accept the significant amount of covered losses and damages caused by the Storm, Defendant engaged in a coordinated and determined scheme to avoid liability on the claim and avoid full payment on the claim, including maintaining silence in response to Plaintiff's numerous requests, clearly hoping to Plaintiff would miss the statute of limitations, thus excusing Defendant from performance of its legal obligations.

54. To date, Defendant has delayed full payment on the Claim as owed under the Policy, and continues to delay full resolution of the Claim, causing Plaintiff further injury and damages.

55. Defendant misrepresented to Plaintiff that the damage to the Property was not covered under the Policy, even though the damage was covered by the Policy. Defendant failed to conduct a proper and timely investigation and misrepresented to Plaintiff about the coverage of the Policy. Thus, its denial to fully compensate Plaintiff was a misrepresentation of the Policy. Defendant's

conduct constitutes a violation of TEX.INS.CODE §541.060(a)(1).

56. Defendant failed to attempt in good faith to effectuate a prompt, fair, and equitable settlement of Plaintiff's Claim, when Defendant's liability was reasonably clear. Specifically, Defendant adjusted the entire Claim with an outcome-oriented approach and failed to commence a proper investigation of the Claim. This resulted in Defendant's delayed completion of the investigation of the Claim. Defendant's conduct constitutes a violation of TEX.INS.CODE §541.060(a)(2)(a).

57. Defendant failed to explain to Plaintiff the reasons for its failure to offer any kind of settlement. Specifically, Defendant failed to offer Plaintiff adequate compensation, without any proper explanation why full payment was not being made. Furthermore, Defendant did not communicate that any future settlements or payments would be forthcoming to pay for the entire loss covered under the Policy, nor did Defendant provide any reasonable explanation for the failure to adequately settle Plaintiff's claim. Defendant's conduct constitutes a violation of TEX.INS.CODE §541.060(a)(3).

58. Defendant failed to affirm or deny coverage of Plaintiff's claim within a reasonable time. Specifically, Plaintiff did not receive timely indication of acceptance or rejection, regarding the full and entire claims, in writing from Defendant despite Plaintiff's attempts for a timely resolution. Defendant continued to rely on misrepresentations, obfuscation, and silence, and refused to adjust or fully account for the documents presented to them evidencing storm damage to the Property as a result of the subject Storm event. Defendant's conduct constitutes a violation of TEX.INS.CODE §541.060(a)(4).

59. Defendant refused to fully compensate Plaintiff for the Claim without conducting a reasonable investigation of the Claim. Rather, Defendant performed an unreasonable outcome-

oriented investigation of Plaintiff's claim, which resulted in a biased, unfair and inequitable evaluation of Plaintiff's Claim. Defendant ignored the documents and information evidencing the storm damages at the Property and continued to rely on misrepresentations about the Property, the Storm, and covered perils under the Policy. Defendant's conduct constitutes a violation of TEX.INS.CODE §541.060(a)(7).

60. Defendant failed to meet its obligations under the Texas Insurance Code regarding the timely acknowledgement of Plaintiff's claim, beginning an investigation of Plaintiff's claim and requesting all information reasonably necessary to investigate Plaintiff's claim within the statutorily mandated time of receiving notice of Plaintiff's claim. Defendant's conduct constitutes a violation of TEX.INS.CODE §542.055.

61. Defendant failed to accept or deny Plaintiff's full and entire Claim within the statutorily mandated time of receiving all necessary information. Defendant's conduct constitutes a violation of TEX.INS.CODE §542.056.

62. Defendant failed to meet its obligations under the Texas Insurance Code regarding payment of claims without delay. Specifically, Defendant has delayed full payment of Plaintiff's claim longer than allowed and, to date, Plaintiff has not yet received full payment for its claim as owed under the Policy. The Property's covered damages under the Policy were made known to Defendant at the outset of the Claim investigation, yet Defendant refused to comply with its obligations and make payments owed under the Policy. Defendant's conduct constitutes a violation of TEX.INS.CODE §541.058.

63. From and after the time Plaintiff's claim was presented to Defendant, the liability of Defendant to pay the full claim in accordance with the terms of the Policy was reasonably clear. However, Defendant has refused to pay Plaintiff in full, despite there being no basis whatsoever

on which a reasonable insurance company would have relied upon to deny the full payment. Defendant's conduct constitutes a breach of the common law duty of good faith and fair dealing.

64.  Defendant knowingly and/or recklessly made false representations, as described above, as to material facts and/or knowingly concealed material information from Plaintiff.

65.  Because of Defendant's wrongful acts and omissions, Plaintiff was forced to retain the professional services of the law firm who is representing Plaintiff with respect to these causes of action.

## VI.
## CAUSES OF ACTION AGAINST DEFENDANT WESTCHESTER

66.  Defendant is liable to Plaintiff for intentional breach of contract, as well as intentional violations of the Texas Insurance Code and intentional breach of the common law duty of good faith and fair dealing.

67.  Plaintiff reincorporates and realleges each and every allegation in the preceding paragraphs as if fully set forth herein.

    **A.**    **Breach of Contract.**

68.  The Policy is a valid, binding, and enforceable contract between Plaintiff and Defendant. Defendant breached the contract by refusing to perform its obligations under the terms of the Policy and pursuant to Texas law. Defendant's breach proximately caused Plaintiff's injuries and damages. All conditions precedent required under the Policy have been performed, excused, waived or otherwise satisfied by Plaintiff, or Defendant is estopped from raising the issue due to Defendant's prior breach of the insurance contract.

    **B.**    **Noncompliance With Texas Insurance Code: Unfair Settlement Practices.**

69.  The conduct, acts, and/or omissions by Defendant constituted Unfair Settlement Practices pursuant to TEX. INS. CODE.§541.060(a). All violations under this article are made actionable by

Tex.Ins.Code §541.151.

70.  Defendant's unfair settlement practice, as described above, of misrepresenting to Plaintiff material facts relating to the coverage at issue, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. Tex.Ins.Code §541.060(1).

71.  Defendant's unfair settlement practice, as described above, of failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of the claim, even though Defendant's liability under the Policy was reasonably clear, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. Tex.Ins.Code §541.060(2)(A).

72.  Defendant's unfair settlement practice, as described above, of failing to promptly provide Plaintiff with a reasonable explanation of the basis in the Policy, in relation to the facts or applicable law, for its offer of a compromise settlement of the claim, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. Tex.Ins.Code §541.060(3).

73.  Defendant's unfair settlement practice, as described above, of failing within a reasonable time to affirm or deny coverage of the claim to Plaintiff or to submit a reservation of rights to Plaintiff, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. Tex.Ins.Code §541.060(4).

74.  Defendant's unfair settlement practice, as described above, of refusing to pay Plaintiff's Claim without conducting a reasonable investigation, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. Tex.Ins.Code §541.060(7).

75.  Defendant's conduct described above compelled Plaintiff to initiate a lawsuit to recover amounts due under its policy by offering substantially less than the amount ultimately recovered.

This continued failure compelled Plaintiff to file suit. TEX.INS.CODE §542.003(5).

### C. Prompt Payment Of Claims Violations.

76. The Claim is a claim under an insurance policy with Defendant of which Plaintiff gave Defendant prompt and timely notice. Defendant is liable for the Claim. Defendant violated the prompt payment of claims provisions of TEX. INS. CODE § 542.051, *et seq.* by:

   a) Failing to acknowledge receipt of the Claim, commence investigation of the Claim, and/or request from Plaintiff all items, statements, and forms that Defendant reasonably believed would be required within the time constraints provided by TEX. INS. CODE §542.055. Specifically, Defendant failed to commence a proper investigation of the Claim and failed to request the documents and other forms it required to properly adjust Plaintiff's Claim within a reasonable time and manner. Defendant received notice of the loss promptly after the Storm, but failed to promptly investigate, and when it did it conducted an improper subpar investigation that resulted in a gross undervaluation of the damages and a wrongful partial denial of the claim. Defendant continued to delay performing a full and proper investigation of the Claim and continued to conduct an inadequate analysis of the Claim.;

   b) Failing to notify Plaintiff in writing of its acceptance or rejection of the Claim within the applicable time constraints provided by TEX. INS. CODE §542.056. Defendant failed to provide Plaintiff with a proper explanation of their Claim decision. Specifically, Defendant delayed a coverage determination, despite having all the information it required to make such determination. Even after its claim decision, it failed to provide an explanation of the basis for its reasoning and failed to account for all aspects of the claim, leaving some issues undetermined. This caused Plaintiff further injury and damages which Defendant was put on notice of; Defendant failed to act on this. Defendant provided no reasonable explanation or justification for its unreasonable delays. Defendant failed to provide a proper explanation of their denial. Defendant relied on misrepresentations about the covered losses and the policy as a basis for its claim decision.; and/or by

   c) Delaying payment of the Claim following Defendant's receipt of all items, statements, and forms reasonably requested and required, longer than the amount of time provided by TEX. INS. CODE §542.058. To date, Defendant has refused to pay the full amount owed under the Policy for the Claim. Defendant continues to delay full resolution of the Claim by refusing to properly adjust Plaintiff's Claim.

77. Defendant's violations of these prompt payment of claims provisions of the Texas Insurance Code are made actionable by TEX.INS.CODE §542.060.

### D. Breach Of The Duty Of Good Faith And Fair Dealing.

78. Defendant breached the common law duty of good faith and fair dealing owed to Plaintiff by denying or delaying payment on the Claim when Defendant knew or should have known that its liability to Plaintiff was reasonably clear. Defendant's conduct proximately caused Plaintiff's injuries and damages.

## VII.
## KNOWLEDGE

79. Each of Defendant's acts described above, together, and singularly, were done "knowingly" as that term is used in the Texas Insurance Code and was a producing cause of Plaintiff's damages described herein.

## VIII.
## DAMAGES

80. Plaintiff will show that all the aforementioned acts, taken together or singularly, constitute the producing causes of the damages sustained by Plaintiff.

81. For breach of contract, Plaintiff is entitled to regain the benefit of Plaintiff's bargain, which is the amount of Plaintiff's claim, together with attorney fees.

82. For noncompliance with the Texas Insurance Code, Unfair Settlement Practices, Plaintiff is entitled to actual damages, which include the loss of the benefits that should have been paid pursuant to the Policy, court costs and attorney's fees. For knowing conduct of the acts complained of, Plaintiff asks for three times Plaintiff's actual damages. TEX.INS.CODE §541.152.

83. For noncompliance with Texas Insurance Code, Prompt Payment of Claims, Plaintiff is entitled to the amount of Plaintiff's claim, penalty interest per annum (calculated by adding five (5) percent to the current interest rate as determined by the Board of Governors of the Federal Reserve System) of the amount of Plaintiff's claim as damages, together with attorney's fees.

TEX.INS.CODE **§**542.060.

84. For breach of the common law duty of good faith and fair dealing, Plaintiff is entitled to compensatory damages, including all forms of loss resulting from the insurer's breach of duty, such as additional costs, economic hardship, losses due to nonpayment of the amount the insurer owed, and exemplary damages.

85. As a direct and foreseeable result of Defendant's acts and omissions in the mishandling of Plaintiff's claim, breach of contract, and violations of the Texas Insurance Code, Plaintiff suffered consequential damages which Plaintiff is entitled to recover.

86. For the prosecution and collection of this claim, Plaintiff has been compelled to engage the services of the law firms whose names are subscribed to this pleading. Therefore, Plaintiff is entitled to recover a sum for the reasonable and necessary services of Plaintiff's attorneys in the preparation and trial of this action, including any appeals to the Court of Appeals and/or the Supreme Court of Texas.

## IX.
## JURY DEMAND

87. Plaintiff has timely requested a jury trial and tendered the appropriate jury fee. [D.E. 1-2].

## X.
## PRAYER

88. WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that upon trial hereof, Plaintiff has and recovers such sums as would reasonably and justly compensate Plaintiff in accordance with the rules of law and procedure, both as to actual damages, statutory penalties and interest, treble damages under the Texas Insurance Code and all punitive and exemplary damages as may be found.  In addition, Plaintiff requests the award of attorney's fees for the trial and any appeal of this case, for all costs of Court on their behalf expended, for pre-judgment and post-

judgment interest as allowed by law, and for any other and further relief, either at law or in equity, to which Plaintiff may show itself to be justly entitled.

          Respectfully submitted,

          **GREEN KLEIN WOOD & JONES**

By:   */s/   Hunter M. Klein*
      HUNTER M. KLEIN
      State Bar No.: 24082117
      klein@greentriallaw.com
      ROBERT D. GREEN
      State Bar No.: 08368025
      green@greentriallaw.com
      DELARAM FALSAFI
      State Bar No. 24113083
      falsafi@greentriallaw.com
      408 East 7th Street
      Houston, Texas 77007
      Telephone: (713) 654-9222
      Facsimile: (713) 654-2155

      **ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I hereby certify that on this 1st day of September 2023, this document filed through the Court's ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) to:

Stephen P. Pate
COZEN O'CONNOR
LyondellBasell Tower
1221 McKinney, Suite 2900
Houston, Texas 77010
Telephone: (832) 214-3957
Telecopier: (832) 706-3423
spate@cozen.com

**ATTORNEY FOR DEFENDANT**

      */s/ Hunter M. Klein*
      HUNTER M. KLEIN